UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 00-2175(DSD/JMM)

Gary R. Miron,

Plaintiff,

v.

**ORDER**

Minnesota Mining and Manufacturing Company,

Defendant.

Gary M. Rankila, Esq. and Rankila Law Office, 311 First Avenue North, Suite 502, Minneapolis, MN 55401-1697, counsel for plaintiff.

Kathleen M. Mahoney, Esq., David Jordan-Huffman, Esq., and Oppenheimer, Wolff & Donnelly, W-1700 First Bank Building, 332 Minnesota Street, St. Paul, MN 55401, counsel for defendant.

This matter is before the court upon defendant's motion for summary judgment [Docket No. 10]. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendant's motion.

**BACKGROUND**

Plaintiff Gary Miron began working at defendant Minnesota Mining and Manufacturing Company ("3M") shortly after graduating from college in 1968. Defendant initially hired plaintiff as a

FILED 12-19-01
RICHARD D. SLETTEN, CLERK
Judgment Ent'd. 12-19-01
Deputy Clerk's Initials

quality-control liaison with vendors. In 1969, he became a full-time chemist. Defendant promoted him to advance chemist in 1970 and promoted him several other times in subsequent years.

Unknown to defendant, plaintiff began treatment for clinical depression in 1995. Plaintiff took the anti-depressant medication Paxil and received counseling. In August 1996, plaintiff suffered a recurrence of clinical depression. He told his supervisor, James Harper, that "health issues" were affecting his work. In October 1996, plaintiff disclosed to Harper the details of his depression and treatment. Plaintiff also told his manager, Tim Drahnak, that he had been diagnosed with depression and that his doctor was determining the proper regimen of medications for him. Plaintiff asked Harper and Drahnak for their patience and understanding until the medication issue was resolved.

On February 20, 1997, Harper completed plaintiff's 1996 performance review. While the review noted a number of plaintiff's strengths and included an overall rating of "good level of contribution for this year," the review also reflected a concern about plaintiff's ability to meet some of his objectives. (Jordan-Huffman Aff. Ex. A at 45; Ex. B.) Along with the review, Harper completed a memorandum which provided further detail about plaintiff's failure to meet team obligations in a timely manner. (Jordan-Huffman Aff. Ex. C.)

In June, 1997, Mark Strenger became plaintiff's supervisor. Plaintiff told Strenger that he had been diagnosed with depression and about his medical treatment. Strenger performed plaintiff's 1997 performance assessment. In it, Strenger noted plaintiff's diminished contribution that year. While plaintiff's overall rating for the year was "good level of contribution," (Jordan-Huffman Aff. Ex. E), Strenger rated plaintiff as needing improvement in six areas.

In 1998, Gregg Patnode and plaintiff became research partners to help plaintiff regain his former level of contribution. While Patnode testified that he performed 75 percent of their work and that plaintiff performed 25 percent of the work, (Jordan-Huffman Aff. Ex. D at 47), plaintiff contends that Patnode did 60 percent of their team's work, (Jordan-Huffman Aff. Ex. A at 105). To help Strenger determine plaintiff's contribution level, he directed plaintiff to provide a weekly memo which accounted for plaintiff's time. (Jordan-Huffman Aff. Ex. F.) Strenger emphasized that the reports need not be formal. (Strenger Aff. at ¶5.) Plaintiff objected to this monitoring, calling the requirement "demeaning," "punitive, discriminatory and unwarranted." (Jordan-Huffman Aff. Ex. A at 93, 95.)

In June 1998, plaintiff advised Strenger that he was unable to comply with the reporting requirement.[1] While Strenger acknowledged that plaintiff had been working hard and improving his performance, Strenger emphasized that plaintiff had to complete the time reports. On July 9, 1998, Strenger reiterated the requirement and placed plaintiff on a corrective action plan. Plaintiff did not comply with the corrective action plan. Instead, a few days later, plaintiff met with Mike Neely to question Strenger's authority to require plaintiff to account for his time. Neely confirmed that Strenger had such authority.

That evening, plaintiff decided to resign and tendered his letter of resignation on July 16, 1998, with an effective date of July 31, 1998. (Jordan-Huffman Aff. Ex. H.) Plaintiff then sued defendant, claiming disability discrimination, retaliation and reprisal. Defendant now moves for summary judgment and the court grants the motion.

---

[1] In his deposition testimony, plaintiff explained why he would not prepare the time reports:

> "I mention two factors. One was that - that it was going to adversely affect my productivity, and the other was that it - that it was, I considered, a very distasteful, wasteful - for me, an intolerable task to do when I was doing my job, and I am still trying to fight for wellness." (Jordan-Huffman Aff. Ex. at 105.)

## DISCUSSION

### I. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)(quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be

granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**II. Disability Discrimination**

The Americans with Disabilities Act ("ADA") proscribes discrimination by an employer "against a qualified individual with a disability because of the disability of such an individual...." 42 U.S.C. § 12112(a). Similarly, the Minnesota Human Rights Act ("MHRA") creates a civil cause of action against employers who discharge an employee based on that individual's disability. Minn. Stat. § 363.03 subd. 1(2)(b). The basic burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) applies to claims brought under both statutes. See, e.g., Snow v. Ridgeview Medical Ctr., 128 F.3d 1201, 1206 (8th Cir. 1997)(applying McDonnell Douglas burden-shifting framework to disability claim under the ADA and the MHRA); Helfter v. United Parcel Serv., Inc., 115 F.3d 613, 616 (8th Cir. 1997)("Federal courts analyze disability discrimination claims by using the burden-shifting framework established in *McDonnell Douglas* ..."); Lindgren v. Harmon Glass Co., 489 N.W.2d 804, 808 (Minn. Ct. App. 1992)(using McDonnell Douglas analysis for disability discrimination claim under the MHRA).

Under this framework, a plaintiff must establish a prima facie case by showing that (1) he was disabled, (2) he was qualified to

perform the essential functions of his job, with or without reasonable accommodations and (3) he suffered an adverse employment action as a result of his disability. Moritz v. Frontier Airlines, Inc., 147 F.3d 784, 786 (8th Cir. 1998); Snow v. Ridgeview Medical Center, 128 F.3d at 1206. Once the plaintiff has established his prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. McDonnell Douglas Corp. v. Green, 411 U.S. at 802. If the employer successfully makes this showing, the burden of production shifts back to the plaintiff to demonstrate that the employer's proffered reason is a pretext for unlawful discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993). The ultimate burden of proving unlawful discrimination always rests with the plaintiff. Id. at 507.

**A. Disability**

Here, plaintiff's disability discrimination claim fails because plaintiff cannot show that he was disabled within the meaning of the ADA.[2] Under the ADA, disability is defined as: "(A) a physical or mental impairment that substantially limits one

[2] The parties agree that disability discrimination claims under the ADA and the MHRA are assessed under the same standards. Moreover, the Eighth Circuit considers the difference between the MHRA standard of "materially" and the ADA standard of "substantially" limited to be "merely semantic." Weber v. Strippit, Inc., 186 F.3d 907, 912 n.4 (8th Cir. 1999). As a result, the court's analysis of plaintiff's claims under the ADA applies equally to plaintiff's claims under the MHRA.

or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). In this case, the threshold question is whether plaintiff has stated a claim under subsection (A) of the disability definition, that is, whether he possesses a physical or mental impairment that substantially limits him in one or more major life activities. See Sutton v. United Airlines, Inc., 527 U.S. 471, 481 (1999); see also, 42 U.S.C. § 12102(2); Minn. Stat. § 363.01, subd. 13. The court finds that plaintiff does not have such an impairment.

To "substantially limit" a major life activity means "to render an individual unable to perform a basic function that the average person in the general population can perform, or to significantly restrict the condition, manner, or duration under which an individual can perform a particular major life activity as compared to an average person in the general population." Snow v. Ridgeview Medical Center, 128 F.3d at 1206. According to the Supreme Court, "[w]hen the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." Sutton v. United Airlines, Inc., 527 U.S. at 491. The inability to perform a single particular job is not a substantial limitation in the major life activity of working. Cooper v. Olin Corp., Winchester Div., 246 F.3d 1083,

1088 (8th Cir. 2001); Snow v. Ridgeview Medical Ctr., 128 F.3d at 1206-07. Instead, as the Supreme Court emphasized:

> To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs. Sutton v. United Airlines, Inc., 527 U.S. at 492.

The court evaluates the following factors to determine whether a plaintiff's condition substantially limited the major life activity of working: (1) the nature and severity of the impairment, (2) its duration or anticipated duration and (3) its long-term impact. See Snow v. Ridgeview Medical Ctr., 128 F.3d at 1207. This inquiry requires an individualized, case-by-case analysis.[3] Sutton v. United Airlines, Inc., 527 U.S. at 483.

In Olson v. Dubuque Cmty. Sch. Dist., a former employee brought an action against the school district, alleging that she was discharged from her position as an elementary school guidance counselor in violation of the ADA. 137 F.3d 609 (8th Cir. 1998). The Eighth Circuit found that plaintiff presented no evidence from

[3] For purposes of this opinion, the court presumes without deciding that working constitutes a major life activity. See Sutton v. United Air Lines, 527 U.S. at 492 (presuming but not deciding that working constitutes a major life activity and discussing the conceptual difficulties of including working within this definition of major life activity.)

which a reasonable fact finder could conclude that she was disabled. Id. at 611. The court reasoned that plaintiff maintained that she was perfectly capable of working as an elementary guidance counselor, she reported to work regularly, and she held her classes. The court further note that plaintiff felt as though she was doing a "satisfactory job." The court thus concluded: "There is no evidence here that a disability rendered her unable to do her particular job, much less that she was unable to do a broad range of jobs." Id.; see also Taylor v. Southwestern Bell Tel. Co., 251 F.3d 735, 739 (8th Cir. 2001)(finding employee did not show that her depression substantially impaired any major life activity so as to render her disabled where she could take care of herself and work); Cooper v. Olin Corp., Winchester Div., 246 F.3d at 1089(finding employee with depression failed to prove that she was substantially limited in her ability to care for herself, as would establish a disability under the ADA.); Winkle v. Southwestern Bell Tel. Co., 195 F.3d 418, 420 (8th Cir. 1999)(holding former employee failed to prove that he had a disability within the meaning of the ADA absent any evidence that plaintiff's depression impaired a major life activity.); Cody v. Cigna Healthcare of St. Louis, Inc., 139 F.3d 595, 598 (8th Cir. 1998)(finding that employee's depression did not impair a

substantial life activity and thus was not a disability where she was able to work, received good reviews, and pointed to no occasion when her depression impeded her work performance).

Here, plaintiff claims that he is disabled because he alleges that his depression substantially impaired his ability to engage in the major life activity of working. Similar to the plaintiff in Olson, however, plaintiff testified that he was able to perform his job fully. (Jordan-Huffman Aff. Ex. A at 98.) He further testified that there was no part of his job that he was unable to perform. (Jordan-Huffman Aff. Ex. A at 98.) In fact, plaintiff received positive reviews for his work, including ratings of "good level of contribution" in 1996 and 1997. Similar to Olson, not only was there no evidence that plaintiff was unable to perform his own job, but plaintiff also presented no evidence that he was unable to perform a broad class of jobs. While plaintiff contends that he suffered from fatigue, loss of focus, lack of concentration and loss of short-term memory, plaintiff presents no evidence that these symptoms prevented plaintiff from working at his own job or a broad class of jobs. Thus, despite plaintiff's depression, the undisputed evidence shows that plaintiff was not limited in the major life activity of working and therefore was not disabled under the ADA.

**B. Failure to Accommodate**

Plaintiff also claims that defendant failed to provide plaintiff with a reasonable accommodation for his alleged disability. To prevail on his failure to accommodate claim, plaintiff must establish a prima facie case of discrimination. See Lippman v. Sholom Home, Inc., 945 F. Supp. 188, 191 (D. Minn. 1996). Plaintiff's failure to accommodate claim fails because plaintiff cannot establish that he was disabled within the meaning of the ADA.

Even if the court were to find that plaintiff was disabled, this claim nevertheless fails because plaintiff did not request an accommodation. "In order to be entitled to an accommodation, the employee must inform the employer that an accommodation is needed." Cannice v. Norwest Bank Iowa N.A., 189 F.3d 723, 727 (8th Cir. 1999). Plaintiff's request for "patience and understanding" did not constitute a request for an accommodation. See Scott v. American Airlines, Inc., 1997 WL 278129 at *1, *5 (N.D. Tex. May 15, 1997)(concluding that employee did not make a request for accommodations, even though employee asked for patience and understanding from employer). Because plaintiff did not request an accommodation, defendant had no duty to provide plaintiff with an accommodation.

Moreover, even if the court were to find that plaintiff's request for "patience and understanding" was a request for a

reasonable accommodation, the evidence clearly shows that defendant provided the appropriate accommodation. Defendant gave plaintiff flexibility with his work schedule, allowing plaintiff to spend a significant amount of time away from the workplace and to work from home at least 50 percent of the time. (Drahnak Aff. at ¶ 3.) In addition, defendant allowed plaintiff to work in a team with Gregg Patnode, where plaintiff was permitted to work less than his 50 percent share. While plaintiff claims that defendant failed to accommodate him because it did not engage in an interactive process, the Eighth Circuit has repeatedly found that "there is no per se liability under the ADA if an employer fails to engage in an interactive process." Cannice v. Northwest Bank Iowa, N.A., 189 F.3d at 727 (8th Cir. 1999), quoting Fjellestad v. Pizza Hut of America, Inc., 182 F.3d 609, 616-17 (8th Cir. 1999).

Because plaintiff failed to provide evidence from which a reasonable fact finder could conclude that plaintiff had a disability, requested an accommodation or failed to receive the requested accommodation, plaintiff's disability discrimination claim fails and the court grants summary judgment to defendant on this claim.[4]

---

[4] Plaintiff also claims that defendant discriminated against plaintiff by unfairly disciplining him, by subjecting plaintiff to harassment and a hostile work environment, and by constructively discharging plaintiff. Each of these claims also fails because plaintiff failed to establish that he had a disability or that defendant discriminated against him because of his alleged (continued...)

**III. Retaliation and Reprisal**

While plaintiff alleges that defendant took punitive actions against plaintiff in violation of the ADA and the MHRA, the court finds that a reasonable fact finder could not conclude that defendant engaged in retaliation or reprisal. The ADA prohibits retaliation or discrimination "against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). The MHRA contains a similar prescription. See Minn. Stat. § 363.03, subd. 7. The standards to be applied under the ADA and the MHRA to plaintiff's retaliation claim are identical. See Breiland v. Advance Circuits, Inc., 976 F. Supp. 858, 865 (D. Minn. 1997)(utilizing same standard where retaliation claim was based on both ADA and MHRA).

To establish a prima facie case of retaliation or reprisal, plaintiff must demonstrate: (1) that he engaged in statutorily protected conduct, (2) an adverse employment action, and (3) a causal connection between the adverse employment action and the protected activity. Evans v. Kansas City, Mo. Sch. Dist., 65 F.3d 98, 100 (8th Cir. 1998); Montandon v. Farmland Inds., Inc., 116 F.3d

---

[4](...continued) disability.

355, 359 (8th Cir. 1997); Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 444 (Minn. 1983). If the plaintiff makes this prima facie showing, the defendant may rebut the plaintiff's case by advancing a legitimate, nonretaliatory reason for the adverse employment action. St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 506-07. When the defendant proffers a legitimate nonretaliatory reason, the burden shifts back to the plaintiff to show that the defendant's reason is a pretext for illegal retaliation. Id.

The parties dispute whether plaintiff engaged in protected activity. Plaintiff alleges that he engaged in protected activity when he disclosed his disability to defendant, requested patience and understanding, and complained about his performance review. The court need not address the question of whether plaintiff engaged in a protected activity because, even assuming that plaintiff's conduct was protected, plaintiff provides no evidence that he suffered an adverse employment action as a result of his conduct. In particular, while plaintiff alleges that he suffered adverse employment actions when defendant gave him negative performance reviews, required him to complete time reports, and placed him on a corrective active plan, these incidents do not constitute adverse employment actions.

The Eighth Circuit has stated that not everything that makes an employee unhappy is an actionable adverse employment action. LaCroix v. Sears, Roebuck, and Co., 240 F.3d 688, 691 (8th Cir.

2001). Rather, an adverse employment action is exhibited by a material employment disadvantage, such as a change in salary, benefits or responsibilities. LaCroix v. Sears, Roebuck and Co., 240 F.3d at 691; Williams v. City of Kansas City, MO., 223 F.3d 749, 753 (8th Cir. 2000)(citing Scuba v. Nestle U.S.A. Co., 181 F.3d 958, 969 (8th Cir. 1999); see also Phillips v. Collings, 256 F.3d 843, 848 (8th Cir. 2001)("Proof of an adverse employment action requires a 'tangible change in duties or working conditions that constitute a material disadvantage.'").

Plaintiff's 1996 and 1997 performance reviews, the time-reporting requirements, and plaintiff's placement on the corrective action plan did not constitute adverse employment actions. In LaCroix v. Sears, Roebuck and Co., plaintiff alleged that she received a negative performance review in retaliation for her complaint of sexual harassment. 240 F.3d at 691. The court found that plaintiff failed to show how the review was sufficiently adverse since plaintiff received a score indicating that she "consistently meets expectations." Id. The court further noted that plaintiff failed to demonstrate how the review resulted in a material employment disadvantage. Id. at 692. The court therefore upheld the district court's grant of summary judgment on plaintiff's retaliation claim. Id. at 694.

As in LaCroix, plaintiff received positive ratings on his 1996 and 1997 reviews, namely a "good level of contribution," and

presented no evidence showing that his reviews resulted in a material employment disadvantage. Moreover, plaintiff presented no evidence that the time-reporting requirement or corrective action plan resulted in a material employment disadvantage. See also Montandon v. Farmland Industries, Inc., 116 F.3d at 359 (finding that a low performance review and undesirable transfer were not adverse employment actions because they did not entail a change in plaintiff's position, title, salary or any other aspect of plaintiff's employment.) Thus, none of these actions constitute adverse employment actions or support a claim of retaliation or reprisal.

Even if plaintiff had proven that he suffered adverse employment actions, plaintiff's claim nevertheless would fail because defendant presented evidence that it took these actions for legitimate nondiscriminatory business reasons: to ensure that plaintiff perform his equal share of work and was not insubordinate. (Strenger Aff. at ¶ 5, 7.) See Hanebrink v. Brown Shoes Co., 110 F.3d 644, 646 (8th Cir. 1997)("this court ... may not second-guess an employer's personnel decisions...."). Since plaintiff provided no evidence that these proffered reasons were pretextual, plaintiff's retaliation and reprisal claims fail. See Rheineck v. Hutchinson Tech. Inc., 261 F.3d 751, 757-58 (8th Cir. 2001)(finding no evidence of retaliation where defendant offered legitimate nondiscriminatory reasons for placing plaintiff on a

performance plan and denying her raise and where plaintiff offered no evidence of pretext.).

**CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Docket No. 10] is granted and plaintiff's claims are dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 19, 2001

David S. Doty, Judge
United States District Court

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

> ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

**Please forward this announcement to the recipient of this fax.**

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

## For additional information on either program please visit our website at www.mnd.uscourts.gov.

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500